

**SO ORDERED.**

**SIGNED this 25 day of October, 2007.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| ROGER LEE WILLIAMS | 07-00396-5-ATS |
| DEBTOR | |

**ORDER DENYING OBJECTION TO CONFIRMATION**

The matter before the court is the objection filed by eCast Settlement Corporation[1] ("eCast") to confirmation of the chapter 13 plan filed by Roger Lee Williams. The chapter 13 trustee, John F. Logan, filed a motion for confirmation but now contends that the plan was not filed in good faith and should not be confirmed.[2] A hearing took place in Raleigh, North Carolina on October 2, 2007.

Roger Lee Williams filed a petition for relief under chapter 13 of the Bankruptcy Code on February 28, 2007. eCast holds five unsecured claims against the debtor, representing various credit card account balances ranging from $833.11 to $34,180.49. The pertinent facts are undisputed. The debtor's annualized current monthly income is well above the North Carolina median family income.

---

[1] eCast is the assignee of Bank of America/FIA Card Services, formerly MBNA, Bank of America, NA (USA), Direct Merchants Credit Card Bank (Metris), and GE Money Bank JC Penney Dual Card.

[2] In the Eastern District of North Carolina, it is the trustees' practice to file a motion for confirmation of the plan, and if there are no objections, the plan is usually confirmed.

The debtor's Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form 22C") shows a negative monthly disposable income of (-$26.65). In completing Form 22C, the debtor claimed the Internal Revenue Service ("IRS") Local Standard allowance for housing in the amount of $1,005. The debtor's current actual monthly residential mortgage payment is $541. The proposed plan calls for payments of $199 to the trustee for 36 months. According to eCast, after paying the administrative priority claims (consisting of attorneys fees and the trustee's commission), the plan will yield a return of approximately three percent to unsecured creditors.[3]

eCast contends that the plan fails to commit all of the debtor's disposable income to the payment of unsecured creditors as required by 11 U.S.C. § 1325(b)(1)(B). In calculating disposable income, eCast argues that the debtor improperly utilized the IRS Local Standard allowance for housing instead of his actual monthly housing expense. eCast contends that the proper deduction for housing is either the Local Standard allowance or the debtor's actual housing expenses, whichever is less. According to eCast, if the debtor had limited his housing deduction to the actual expense, his expenses would decrease by $464, resulting in a net projected disposable income of $437.35.

eCast further argues that the debtor should pay his disposable income into the plan for five years (rather than the three proposed), because the debtor's "applicable commitment period" under § 1325(b)(4) is five years. It is eCast's position that the debtor must stay in the plan for five years

---

[3]Despite eCast's calculation of a three percent return to unsecured creditors, the trustee's motion for confirmation provides that the debtor shall pay 36 monthly payments of $199, with the obligation to make payments terminating upon payment in full of allowed administrative priority claims. The motion further states, "[i]n this case, general unsecured creditors will receive: $-0-." It follows that the return to unsecured creditors will be zero percent, rather than three percent.

because the applicable commitment period is a temporal period set by statute. The debtor argues that the applicable commitment period is instead a multiplier used to determine the total required payout to unsecured creditors. The debtor contends that the term of the plan may therefore be shorter than the applicable commitment period if the unsecured creditors receive the total payout to which they are entitled in that shorter time.

Notwithstanding his motion for confirmation of the plan, the trustee argued at the hearing that the plan was not filed in good faith because of the minimal expected return to unsecured creditors and the administrative burden it would place on the trustee's office. For the reasons discussed below, the court will deny eCast's and the trustee's objections to confirmation, and the plan will be confirmed.

## I. Issues

The creditor's objection raises multiple issues, many of which have arisen frequently since the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). First, is monthly disposable income determined by the means test or is something more required? When applying the means test, may the debtor deduct the full IRS Local Standard allowance for housing or only actual housing expenses? And in the context of § 1325(b)(1)(B), is the "applicable commitment period" a multiplier used in a calculation, or is it a minimum time period that may affect the plan term? As courts have begun to address these issues in light of the BAPCPA revisions, a number of different views have developed.

eCast's objection to confirmation of the proposed plan triggered the application of § 1325(b)(1), which reads as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1). Because the proposed plan distributions to eCast will not satisfy its claim, subparagraph (A) does not apply, and the requirements of subparagraph (B) must be met in order to confirm the debtor's plan. Subparagraph (B) contains the defined term "disposable income," as well as a new term, "applicable commitment period," which was added by BAPCPA. The BAPCPA revisions also tailored subparagraph (B) to focus specifically on payments to creditors holding unsecured claims.

## II.  Determining "Disposable Income"

"Disposable income" as it applies to § 1325 is defined as follows, in relevant part:

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child . . . ) less amounts reasonably necessary to be expended–
> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation . . . ; and
>     (ii) for charitable contributions . . . ; and
> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2). Prior to BAPCPA, disposable income was determined by the debtor's Schedules I and J. Now, § 1325(b)(3) requires above-median debtors to use the means test to calculate disposable income.[4]

Many have expressed concern regarding this new method of determining disposable income, particularly questioning both the accuracy of the methodology and the implications of the results. In fact, during a hearing in which Judge J. Rich Leonard of this district heard several related cases involving the determination of disposable income, three of the four local chapter 13 trustees reported frustration with the new method. In re Alexander, 344 B.R. 742 (Bankr. E.D.N.C. 2006). Specifically, the issue was raised because "[a] debtor who may have had disposable income under the old law may now have little or no disposable income using the new calculation method." Id. at 746. The Alexander court examined the new statutory text and found that despite the trustees' expressed concerns about using the means test, "§ 1325(b)(2)-(3) plainly sets forth a new definition and method for calculating disposable income, and Form B22C is the tool for arriving at that disposable income figure under the new law." Id. at 747. Similarly, the court in In re Barr found that

> [t]here are new definitions of the income and expenses to be used for determining disposable income that are much different than under the former statute. These definitions are detailed and inflexible, particularly as to expenses and deductions for above-median-income debtors. . . . The use of "shall" in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income.

---

[4]Section 1325(b)(3) provides, "[a]mounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than . . . the median family income of the applicable State . . . ." 11 U.S.C. § 1325(b)(3).

341 B.R. 181, 184-85 (Bankr. M.D.N.C. 2006). The court agrees with Alexander and Barr that the court is limited to use of the means test in determining the debtor's deductions and expenses for purposes of calculating disposable income.

      III.  Application of the Means Test: Proper Deduction for Housing Expenses

Relying on a recent case addressing Form 22C housing expense deductions, eCast contends that in applying the means test, the debtor should either deduct the Local Standard allowance or his actual mortgage expense, whichever is less.[5] However, in the IRS deductions section of Form 22C, the debtor entered the applicable IRS Local Standard allowance for housing ($1,005), less his actual monthly mortgage payment of $541 (as directed by the form), for a net mortgage expense of $464. In the section of the form entitled "Future payments on secured claims," the debtor entered his actual mortgage payment of $541. Thus, eCast argues that had the debtor deducted only his actual mortgage expense of $541, his overall expenses would decrease enough to have disposable income to commit to the payment of eCast's claim.

The debtor contends, relying on another line of cases, that § 707(b)(2)(A)(ii)(I) permits the deduction of the Local Standard allowance despite his lower actual mortgage expense. Section 707(b)(2)(A)(ii)(I) provides, in relevant part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . .

---

[5] The court in In re Rezentes, 368 B.R. 55 (Bankr. D. Haw. 2007), held that an above-median chapter 13 debtor may deduct the Local Standard for housing ownership or the actual amount spent, whichever is less. That court noted a line of cases holding (primarily in the context of vehicle ownership expenses) that debtors may not deduct Local Standard amounts for expenses that are not actually incurred.

6

11 U.S.C. § 707(b)(2)(A)(ii)(I). The cases interpreting this provision seem to turn on two factors: whether this section operates as a fixed allowance or a cap, and the meaning of the word "applicable." This court previously addressed these issues in the context of vehicle ownership expenses in In re Taylor, Case No. 06-01348-5-ATS (Bankr. E.D.N.C. Dec. 18, 2006). The court finds that the same reasoning applied in Taylor applies to the present case regarding housing ownership expense deductions. As stated in Taylor, regarding § 707(b)(2)(A)(ii)(I):

> This court is persuaded by and adopts the reasoning in In re Fowler, 349 B.R. 414 (Bankr. D. Del. 2006), and In re Prince, 2006 WL 3501281 (Bankr. M.D.N.C. Nov. 30, 2006), which hold that the section operates as a fixed allowance and that the term "applicable" means the standards applicable to the debtor, not the actual expenses that are applicable to the debtor. See Prince at *3 ("[t]o read section 707(b)(2)(A)(ii)(I) as permitting the courts to comb through the Internal Revenue Manual in order to pick and choose provisions to apply in a given case injects great uncertainty into the process of determining a debtor's expenses for purposes of the means test."); Fowler, 349 B.R. at 417-418 ("applicable" refers to the number of vehicles owned by the debtor, as opposed to "actual," which is used elsewhere in the section); see also Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. Inst. L.J. 231 (2005).

Taylor at 3. The court therefore holds that the debtor in this case is entitled to deduct the Local Standard allowance for housing ownership expenses in applying the means test to determine his disposable income.

### IV. The Effect of the "Applicable Commitment Period"

eCast further objects to confirmation of the debtor's proposed plan because the plan will be completed in three years. eCast argues that the debtor's "applicable commitment period" under § 1325(b)(4) is five years, based on the debtor's above-median income status, and that the debtor must therefore remain in the plan for five years. On the other hand, the debtor argues that the applicable commitment period is a multiplier, used to determine the total amount that must be paid to unsecured creditors during the plan, regardless of the plan's duration.

Section 1325(b)(1)(B) requires the plan to direct all of the debtor's projected disposable income to be received in the applicable commitment period to the payment of unsecured creditors. "Applicable commitment period" is defined within § 1325 as follows:

> For purposes of this subsection, the 'applicable commitment period'–
> (A) subject to paragraph (B), shall be–
> (i) 3 years; or
> (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than–
> (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner . . . [.]

11 U.S.C. § 1325(b)(4). The court agrees with the debtor and many other courts and commentators that have addressed this provision: the applicable commitment period is a multiplier, not a minimum plan term. When an unsecured creditor objects to confirmation, the court may not approve the plan unless it meets the requirements of either subparagraph (A) or subparagraph (B) of § 1325(b)(1). Subparagraph (A) only applies if the objecting creditor's claim will be paid in full under the plan. To satisfy subparagraph (B), the debtor must multiply his annualized projected disposable income by the time period indicated by the applicable commitment period – either the number three or the number five, depending on whether the debtor's income falls below or above the state median income, respectively. Essentially, the applicable commitment period *is* a time period, but it does not set a minimum plan duration. The chapter 13 plan term is of course governed by a separate Code section, § 1322(d). The applicable commitment period may incidentally coincide with the plan term, but a debtor who is able to fulfill his obligations to unsecured creditors under the plan in a term that is shorter than the applicable commitment period is permitted to do so.

This issue recently came before the Bankruptcy Appellate Panel ("BAP") for the Eighth Circuit in In re Frederickson, in which the court held:

>the definition of "applicable commitment period" in § 1325(b)(4) as five years for an above-median debtor does not refer to a minimum plan duration. It refers, instead, to the time during which the debtor must pay projected disposable income to the Trustee for payment to unsecured creditors. Another statutory provision, § 1322(d), discusses the length of the plan related to above-median income debtors. Section 1322(d) would be superfluous if § 1325(b)(4) set the length of the plan.

In re Frederickson, ___ B.R. ___, 2007 WL 2752769, at *5, (8th Cir. BAP Sept. 24, 2007). The BAP cited a recent article in support of its position, in which Judge Randolph J. Haines discusses the present issue, as well as other current chapter 13 issues. Judge Haines views the applicable commitment period as a specified period of time, but not a minimum plan term. Referring to the applicable commitment period, Judge Haines states:

>To render "applicable commitment period" a minimum plan term requires something more than it being a temporal concept. The decisions that find it also to impose a minimum plan term generally fail to indicate why it carries any such additional meaning. Also, it is not an easy matter to divine this additional meaning, since the Code tells us precisely what it means - it means three years or five years, nothing more or less. This definition found in § 1325(b)(4) says nothing about a minimum plan duration. Also, here there is not even an additional word like "projected" that could suggest to courts the term "applicable commitment period" must mean something more than what it is defined to be: "3 years; or . . . not less than 5 years." When that number is multiplied by $/year, the result is a dollar amount, not a temporal concept at all.

Randolph J. Haines, Chapter 11 May Resolve Some Chapter 13 Issues, 8 Norton Bankr. L. Adviser 1, 3 (Aug. 2007) (quoting 11 U.S.C. § 1325(b)(4)).[6] Further, if a debtor wants to pay into the plan the total amount due to unsecured creditors in a time shorter than his applicable commitment period, it seems inefficient and unnecessarily costly to require the debtor to stay in the plan longer than necessary.

---

[6]Judge Haines' article contains an analysis of chapter 11 provisions similar to the chapter 13 provisions in question, suggesting that chapter 11 may be useful in addressing certain chapter 13 shortfalls. However, for the purposes of the present case, this court does not find it necessary to draw such an analogy.

In the present case, the debtor has no disposable income. It follows that his projected disposable income is zero. As an above-median income debtor, his applicable commitment period would be five years. However, because the debtor has no disposable income, the amount that must be committed to pay unsecured creditors is zero (5 years x $0 = $0). The debtor's plan term is governed by § 1322(d)(1), which caps an above-median debtor's plan length at five years. The debtor's thirty-six month plan term is less than five years and is therefore permitted under the Code.

## V. Good Faith

At the hearing, the trustee argued that local debtors' attorneys are disguising chapter 7 cases as chapter 13 cases, with plans that primarily pay attorney's fees and provide little return to creditors. Because the trustee does not vary his commission depending on the plan filed, the trustee argues that this practice has an onerous administrative impact on his office. Counsel for the debtor contends that a plan is not filed in bad faith simply because it proposes to pay no more or no less than what is required under the Bankruptcy Code. The court agrees that the plan was not filed in bad faith. If the Code allows the case to be filed in a certain way, then the court cannot find that it is bad faith to do what the Code allows. The trustee's objection is overruled.

Accordingly, the court holds that (1) disposable income is determined by applying the means test; (2) the debtor may deduct the IRS Local Standard allowing for housing ownership expenses; and (3) the applicable commitment period is a multiplier used to determine the amount owed to unsecured creditors under the plan. The creditor's objection to confirmation of the plan is **DENIED** and the debtor's plan is confirmed.

**SO ORDERED**.

**END OF DOCUMENT**